UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| VOICES.COM INC., <br><br> Plaintiff, <br><br> v. <br><br> MEDIAZAM LLC, <br><br> Defendant. | Case No.:20-cv-292 <br><br> **JURY TRIAL DEMANDED** |

## COMPLAINT FOR DECLARATORY JUDGMENT OF NON-INFRINGEMENT AND PATENT INVALIDITY

Plaintiff Voices.com Inc. ("Voices.com"), by and through its undersigned counsel, files this Complaint for Declaratory Judgement of non-infringement and patent invalidity of U.S. Patent No. 7,421,391 against Defendant MediaZam LLC ("MediaZam"), alleging as follows.

## NATURE OF ACTION

1. This is an action under 28 U.S.C. § 2201(a) for a declaratory judgment of non-infringement of, and invalidity of, U.S. Patent No. 7,421,391 ("'391 Patent") (attached hereto as **Exhibit A**).

## THE PARTIES

2. Voices.com is a Canadian corporation having its principal place of business at 100 Dundas St., Suite 700, London, ON N6A 5B6.

3. On information and belief, MediaZam is a Wisconsin corporation, doing business in the voiceover industry, with its principal place of business at 1780 Limerick Ln., Brookfield, WI 53045.

## JURISDICTION AND VENUE

4. This Complaint arises under the Patent Laws of the United States, 35 U.S.C. § 100 *et seq.* and the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, based upon an actual controversy between the parties for a declaration that Voices.com does not infringe the '391 Patent and that the '391 Patent is invalid.

5. This Court has jurisdiction over Voices.com's declaratory judgment claims pursuant to 28 U.S.C. §§ 2201 *et seq.,* based on MediaZam's threats to sue Voices.com for patent infringement, thereby giving rise to an actual case or controversy under 28 U.S.C. §§ 2201 and 2202. The Court also has jurisdiction under 28 U.S.C. §§ 1331, 1332, and 1338.

6. A substantial controversy of sufficient immediacy and reality exists between the parties to warrant the issuance of a declaratory judgment because MediaZam has asserted to Voices.com that Voices.com directly infringes the '391 Patent through, *inter alia*, Voices.com's operation of its website located at http://www.voices.com, which provides online marketplace services for voiceover talent. These online marketplace services include search functionalities to locate voiceover talent as well as audition functionality permitting custom talent auditions, and engagement and payment functionality used when auditions are successful. Voices.com has consistently denied infringement of the '391 Patent. In the last correspondence, MediaZam's counsel indicated that "[i]f we cannot engage in reasonable discussions toward a mutually acceptable license, MediaZam is prepared to proceed with litigation." (attached hereto as **Exhibit B**).

7. This Court has personal jurisdiction over MediaZam because it resides in and/or has a regular and established place of business in this District.

8. Venue is proper in this District and before this Court under 28 U.S.C. §§ 1391(b) and (c) because, in part, MediaZam resides and/or has a regular and established place of business in this District.

## PATENT IN SUIT

9. On the face of the '391 Patent entitled "System and Method for Voice-Over Asset Management, Search and Presentation", it is indicated that it was issued by the United States Patent and Trademark Office on September 2, 2008.

10. According to the records at the United States Patent and Trademark Office, MediaZam is the assignee of the '391 Patent.

## FACTUAL BACKGROUND

11. Voices.com is an online marketplace connecting those in need of voiceover talent with voice talent. Its customers include voice talent, talent agencies on the supply side, and business clients, such as Hulu, GoDaddy, The History Channel, The Discovery Channel, Microsoft, Cisco, and Lumosity on the demand side of the marketplace.

12. Voice talent is required for multiple purposes, including voices for radio advertisements, voice-overs for television or other video content, audio books, et cetera.

13. Typically, voice talent is retained on a per-job or per-project basis. This means that each project requires a search for voice talent having desired qualities.

14. The traditional business model for searching for voice talent involved a business obtaining voice talent "demo reels" and listening to the demonstration reels. A "demo reel" is a collection of sample script reads provided by a voice talent artist in one consecutive audio recording. The demo reels were provided as audio CDs or cassette tapes. Listening to demo

reels was time consuming and inconvenient for the businesses. Additionally, the material on the demo reels often would be completely irrelevant to a business' specific voice talent needs.

15. In the early 2000's, services began hosting voice talent demo reels online. This removed the burden of distributing physical media, but did not reduce the burden of having to search for talent by listening to numerous lengthy demo reels of likely irrelevant content.

16. On February 18, 2004, Interactive Voices, a predecessor to Voices.com launched and the first memberships were purchased by voice talent who could subscribe to the website allowing voice talent to have a profile with voice demos as well as gaining access to job opportunities.

17. On April 19, 2004, Interactive Voices, a predecessor to Voices.com, released the following press release:

> Interactive Voices, the leading provider of voice production services, today announced the completion of the Interactive Voice Network. Interactive Voices is a trusted neutral party that connects business clients with voice-over talents.
>
> "Voice is the most effective method to communicate a message," said David Ciccarelli, CEO of Interactive Voices.
>
> "We make it easy for companies to post a project. Voice talents are instantly notified and respond with voice-over demos, a personal message and price quote." Ciccarelli added.

(attached as **Exhibit C**). By enabling businesses to post a project, which notifies voice talent to submit auditions to the project online, Mr. Ciccarelli, the current CEO of Voices.com, and Voices.com turned the voice talent search model on its head. No longer were businesses confined to listening to lengthy demonstration reels of largely irrelevant content to search for voice talent. Indeed, businesses no longer had to search at all. The talent would come to the businesses, with a custom reading of text specified by the business in the project posting.

4

18. Building on the innovations of Interactive Voices, Voices.com launched a rebranded website in May 2006. Despite Voices.com having been in business for several years before the issuance of the '391 Patent in 2008, no notice of the '391 Patent's issuance was provided to Voices.com at that time, either by MediaZam or by its predecessor in interest to the '391 Patent, ZamTech LLC. Indeed, Voices.com continued to conduct business and continued to grow for *more than a decade* before MediaZam or ZamTech LLC provided notice of the '391 Patent.

19. Voices.com is now the world's leading provider of online marketplace services for connecting businesses with professional voice talent, having more than 50% of the market. Voices.com achieved this remarkable feat not by following the previously-known business models, but by rejecting them.

20. Upending the traditional model, Voices.com established an online service where businesses could post voice-over opportunities ("projects"), and invite voice talent to submit custom auditions. Such projects include a sample portion of text of the intended complete voice recording for the project. This enables businesses to listen to custom auditions using the actual text of the intended recording submitted by multiple voice talents, rather than lengthy demo reels and/or audio reads extracted from those demo reels, which are often entirely unrelated to the subject matter of the project.

21. On information and belief, on September 7, 2004, U.S. Patent Application No. 10/935,548 ("the '548 Application") was filed. The '548 Application issued as the '391 Patent.

22. The '548 Application disclosed and claimed a system that would arrange demo reels comprising multiple reads (voice samples) into individual "audio reads." On February 21, 2008, the examiner for the '548 Application issued a rejection for all of the claims of the '548

5

Application as either being anticipated or rendered obvious in view of the prior art. (**Exhibit D**). In an effort to overcome the rejections to the then-pending claims, on May 19, 2008, the Applicant narrowed the claims by amending each occurrence of the claim term "reads" to "<u>audio</u> reads." In explaining the amendment, the Applicant stated that the claims required "a plurality of individually-profiled reads for each voice talent comprising a demo reel. As such, audio reads occur within demo reels." (**Exhibit E**). The Applicant further explained, "A vocal performances demo reel usually consists of anywhere from seven to eight to as many as ten to fifteen (or even more) different pieces of voiced ad copy spliced together in the demo reel." (**Exhibit E**). Thus, according to the Applicant's own representations to the U.S. Patent Office, "audio reads," as the term is used in the claims, are reads which are derived from a longer recording including multiple different pieces of copy spliced together. In response to the amendments and these representations, the U.S. Patent Office allowed the '548 Application to issue as the '391 Patent.

23. Even if breaking down a demo reel into audio reads comprised an improvement over searching through entire demo reels, under the methods and systems claimed in the '391 Patent, the businesses nevertheless disadvantageously have to search through multiple audio reads (*i.e.*, demo reel segments) of pre-recorded, largely irrelevant content.

24. On December 19, 2018, more than a decade after the '391 Patent was issued by the United States Patent and Trademark Office and more than thirteen years after Voices.com launched its business, MediaZam, through its counsel, sent Mr. Ciccarelli, CEO of Voices.com, a letter alleging that MediaZam was owner by assignment of the '391 Patent and that aspects of Voices.com's activities were similar to the claims and disclosures of the '391 Patent.

25. On September 30, 2019, Voices.com, through its counsel, responded that there were significant issues with the validity of the '391 Patent and that Voices.com did not infringe the '391 Patent.

26. On October 14, 2019, through its counsel, MediaZam asserted, without any detailed analysis, that it "remain[ed] convinced" that Voices.com infringes at least Claims 20, 33, 34, 36, and 42 the '391 Patent and that the '391 Patent would survive any challenge to its validity.

27. On November 8, 2019, through its counsel, Voices.com repeated its view that it does not infringe any of the claims of the '391 Patent.

28. On February 6, 2020, MediaZam, though its counsel, asserted that Voices.com infringes at least independent claims 20, 33, 34, 36 and 42 of the '391 Patent and that if the parties cannot "engage in reasonable discussions toward a mutually acceptable license, MediaZam is prepared to proceed with litigation." (**Exhibit B**).

## COUNT I
## Declaratory Judgment of Non-Infringement of the '391 Patent

29. Voices.com incorporates by reference the allegations of Paragraphs 1 through 28 as if fully set forth herein.

30. There is a substantial and continuing controversy between Voices.com and MediaZam and a declaration of rights is both necessary and appropriate to establish Voices.com does not infringe any claim of the '391 Patent.

31. Voices.com, including its online marketplace services, does not and has not directly infringed the '391 Patent under 35 U.S.C. § 271(a), either literally or under the Doctrine of Equivalents because, *inter alia*, Voices.com does not create, host or provide access to "audio

7

reads", as that term is used in the '931 Patent. In particular, Voices.com does not arrange demo reels comprising multiple audio reads into individual audio reads. If a voice talent using the Voices.com services were to upload a recording comprising multiple different vocal performances in one continuous recording—which, again, is not Voices.com's business model—that would remain one continuous recording. Nothing is broken down into individual "audio reads," and there is no means offered by Voices.com to identify, distinguish or separate particular "audio reads" within such a recording to facilitate individual playback. Further, if a voice talent uploads a recording that comprises a single vocal performance, or a vocal sample based on a provided script, that is also not an "audio read" as claimed in the '391 Patent, because that sample or single performance was not derived from a larger demo reel comprising multiple different vocal performances.

32. Liability for either active inducement of infringement under § 271(b) or for contributory infringement under § 271(c) depends on proof of direct infringement. There is and can be no indirect infringement without an act of direct infringement. Because neither Voices.com and its online marketplace services nor the customers that utilize its service directly infringe any claims of the '391 patent, there also can be no indirect infringement under 35 U.S.C. §§ 271(b) or (c).

33. Voices.com, including its online marketplace services, does not and has not induced infringement of the '391 Patent under 35 U.S.C. § 271(b), either literally or under the Doctrine of Equivalents.

34. For these same reasons, Voices.com, including its online marketplace services, does not and has not contributorily infringed the '391 patent under 35 U.S.C. § 271(c), either literally or under the Doctrine of Equivalents.

8

## COUNT II
## Declaratory Judgment of Invalidity of the '391 Patent

35. Voices.com incorporates by reference the allegations of Paragraphs 1 through 34.

36. The '391 Patent is invalid under the Patent Laws of the United States of America, 35 U.S.C. § 1 et. seq., including but not limited to 35 U.S.C. §§ 101, 102, 103, and/or 112.

37. The claims of the '391 Patent do not recite any improvements in the operations of computers or computer networks themselves. Instead, the claims recite abstract ideas implemented on generic computers. For at least these reasons, the claims of the '391 Patent are invalid under 35 U.S.C. § 101.

38. The '391 Patent admits that certain aspects of project-centric voice talent auditioning were in the prior art. For example, the '391 Patent admits that "current industry practice" included uploading audition audio files to a project:

> [T]he current industry practice involves the producers using voicebank(dot)com to **submit audition projects to the voicebank(dot)com system**. These projects **include the actual script to be read by the talent** and deadlines. The agent may then intercept these scripts, call their talents to read them and **record the talents in a recording studio** normally located within the talent agency. **The audition audio files are then uploaded to the voicebank(dot)com system (i.e., Website) and posted to the producer's project**, where producers will audition the uploaded reads.

**Exhibit A** at column 25, lines 37-46 (emphasis added). Thus, there was nothing novel or non-obvious concerning uploading individual reads to an online service at the time of the purported invention of the '391 Patent.

39. Inexplicably, in an Information Disclosure Statement dated September 29, 2005, Applicant represented to the U.S. Patent Office that "voicebank(dot)com" presented "only reel

demos," without mentioning the audition audio file submissions that is admitted prior art in the specification. (**Exhibit F**).

40. Moreover, the prior art includes numerous examples of profiling audio and audio-visual content and making such content individually accessible through a search. For example, when Apple launched the iTunes Web Music Store on April 28, 2003, songs were individually profiled, and users could search the entire music store to locate any song by title, artist or album. Users could listen to free 30-second previews of any song in the store.

41. It also was known to index content within a longer recording. U.S. Patent No. 7,292,979, for example, discusses applying software tags to archives of content stored by television, radio, and news production facilities. The software tags contained descriptors about the archived audio or video data in order to assist searching through and finding a desired piece of information in the volumes of material. This prior art reference points out disadvantages of manually generating software tags for the content, and then discloses an automated process for indexing audio and audio/video content.

42. In the field of online voice talent services, as early as April 24, 2003, VoiceModels.com encouraged and provided the ability for voice talent to upload multiple separate voice samples (eschewing the "demo reel" format), going so far as to suggest that voice talent make their first sample from the text of the background information in their profile. The Applicant for the '391 Patent disclosed the existence of www.voicemodels.com in its Information Disclosure Statement, but failed to provide the web pages disclosing that website's ability for voice talent to upload multiple separate voice samples.

43. Adapting such known techniques to voice talent demo reels is not inventive. For at least these reasons, the claims of the '931 Patent are invalid under 35 U.S.C. §§ 102 and 103.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Voices.com respectfully requests judgment against MediaZam as follows:

A. Declaring that Voices.com does not infringe any claim of the '391 Patent;

B. Declaring that each claim of the '391 Patent is invalid;

C. Enjoining MediaZam and those in privity with MediaZam from asserting the '391 Patent against Voices.com and Voices.com's representatives, agents, subsidiaries, vendors, and customers;

D. Finding that this is an exceptional case under 35 U.S.C. § 285 and awarding Voices.com the costs and expenses of this litigation, including reasonable attorneys' fees and disbursements;

E. Awarding Voices.com its costs and prejudgment interest in this action; and

F. Awarding Voices.com such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Pursuant to Fed. R. Civ. P. 38, Voices.com demands a trial by jury on all issues triable of right by jury.

Dated: February 21, 2020

Respectfully submitted,

   *s/James A. Friedman*
James A. Friedman, State Bar No. 1020756
Matthew M. Wuest, State Bar No. 1079834
Attorney for Plaintiff
Godfrey & Kahn, S.C.
One East Main Street
Suite 500
Madison, WI 53703-3300
T: (608) 284-2617
F. (608) 257-0609
Email:  jfriedman@gklaw.com
         mwuest@gklaw.com


Sherry L. Rollo, State Bar No. 6283866
Admission to Eastern District pending
Steven E. Feldman, State Bar No. 6229228
Hahn Loeser & Parks LLP
200 W. Madison St., Suite 2700
Chicago, IL 60606
T: (312) 637-3020
F: (312) 637-3021
Email:  srollo@hahnlaw.com
         sfeldman@hahnlaw.com

21909673.1